Our first and only case this morning is Ovando v. Attorney General, and we'll hear from Mr. Healy for the petitioner. You may proceed. Oh, would you like to reserve some time? Yes, Your Honor. Three minutes, please. That'll be granted. May it please the Court, Christopher Healy for Mr. Rosario Ovando. Can we start off with something that is not, it is related to this appeal, but maybe not necessarily what's in your brief so much. We read in the briefs that, and the agency decisions referred to it, of two convictions for retail theft that were under appeal at the time, at that time. Can you give us the status of that appeal? My understanding is that one was ultimately withdrawn, the other was sustained and would likely fall under the petty offense exception. But the convictions are final. I believe that is correct, Your Honor. Thank you. All right. Well, I'd be interested, I anticipate what your argument is going to be here, but I'd be interested in the government's as well. If we were to remand this matter to the BIA, would those convictions be a separate basis for concluding that your client was convicted of a CIMT? I would have to check the dates of conviction, Your Honor, but if they preceded the BIA's decision in In re Diaz-Lazaraga, I would say that they are not, because those convictions rely on the statutory definition of deprive, which doesn't require a permanent intent, which was the state of the BIA's case law prior to Diaz-Lazaraga, and this Court held that that decision does not apply retroactively. But none of that is before the Court today. But you don't think you're going for a pyrrhic victory, in other words? No, I don't. And I don't think that, I mean, those charges, you know, the government's NTA on those charges was dismissed without prejudice, but, you know, they're not in the case right now. So in Jersey, we call that wheel-spinning, but Judge Prater is very smart, uses the fancy language. Yes, yes. All right. Thank you. We would just ask maybe the government if they can posit on that as well. That'd be great. But you can proceed. Okay. Thank you, Your Honor. So the question under the categorical approach is whether the least culpable conduct covered by the state offense involves moral turpitude. And under this statute, that conduct consists of a willful failure to immediately stop one's vehicle in response to an officer's signal while unknowingly crossing a state line. You added the unknowingly, right? Well, I added it, but it applies. The felony aggravating factors apply with strict liability, which means that they're triggered. What is your statutory authority to say it's a strict liability and not a part of the willfulness doesn't apply to each one of those elements? So first of all, under Title 75, this is under the traffic code, offenses are presumed to be strict or absolute liability unless noted otherwise. And in this statute, it begins with willfulness in the universal element that must be satisfied for every one of the different ways to commit this offense or the elements to commit this offense. It has willfulness. Do you agree with that? I agree with that. But I have a couple of points in response, Your Honor. First of all, I mean, the government hasn't argued that their aggravating factors have any mental state greater than strict liability. And I'd also argue that certainly there's a canon of statutory construction to sort of interpret a mental state consistently throughout a statute. But in the particular case of the felony factors, the first one refers to a conviction for drunk driving, which is a strict liability offense. And so I think it's actually more consistent to interpret the felony factors consistently with one another, which is that drunk driving is strict liability. Crossing a state line would be strict liability. And engaging in a high-speed chase would also be strict liability. Do you agree that the, what you're calling aggravated factors are elements of the crime? So I agree that the presence of an aggravating factor is an element. I don't agree that they are each themselves elements, by which I mean that I don't think that the felony provision is divisible. How do you reconcile that position with Bowen versus Commonwealth and the Pennsylvania suggested jury instructions, which seem to identify each of them as elements? So I think the Pennsylvania jury instructions specify that the jury has to agree beyond a reasonable doubt that, you know, an aggravating offense, an aggravating factor was present, but it doesn't instruct that they have to agree on which particular factor it was. But doesn't the instruction give, isn't the direction the jury has to answer a question concerning which one of those was satisfied? I think it indicates, it notes that on the verdict form there might be, you know, they might have to indicate that. But you know, just to give an example, Your Honor, like the, it's perfectly possible that, you know, juries could disagree on which aggravating factor was present. So for example- Well that would only be if it seemed a means, not an element. Yes, yes, that's true. But if there's any ambiguity about it, the court only has to look at the, Mr. Rosario Vando's actual conviction record, which- Which is silent as to which one of those factors is satisfied, correct? Well that's under the modified categorical, yes. But I'm actually talking about the Mathis peak. So the Supreme Court in Mathis said that if it's unclear as to what state law, under state law, whether the alternatives are means or elements, the sort of tiebreaker can go, the court can look at the actual record of conviction and see how the crimes are pled. And if you look at Mr. Rosario Vando's record, he's charged with felony three or F3 grade of the offense with no specific aggravating factor. Under Mathis, Justice Kagan said that's as good of evidence as any, that those are just But that ignores what the Pennsylvania Supreme Court said in Bowen, right? We'd have to ignore what the comment that court said on the fact that these are elements, each one. Right? Maybe you're not familiar with Bowen and that's okay. But if my reading of Bowen is correct, would you agree then if Bowen says each are elements, the jury would have to be unanimous. And since we don't know from the proper Shepard documents, which one he faces, we have to look at the least culpable conduct. I agree with that. And I think that even if we're in the modified, as you said, the record is unclear about that. So we start looking at the least culpable conduct. Can we consider count two in any way? Count two, he was adjudicated guilty of endangering the welfare of a child or a minor. What factor should that play, if any? I don't think it has any role to play in this, Your Honor, because so the purpose of the with the third felony grade, I mean, endangering, it's endangering kids. Well, the third felony grade is engaging in a high-speed chase that endangers an officer or a member of the public. And the welfare count says nothing about a high-speed chase. And Mr. Rosario Vanda's plea agreement, this is at appendix page 23, paragraph 17, states that sort of the factual predicate for his plea of guilty. All he says is that he drove away from a police officer, doesn't admit to any particular aggravating factor. So the record, and this is the BIA and the IJ agreed with this, the record doesn't say or doesn't provide any sort of clue as to what the aggravating factor actually was. And under this court's precedence, you can't look at sort of charged but unconvicted conduct in an attempt to sort of infer what the aggravating factor was. You know, the modified approach is really focused on... Which approach do you think we have to apply here? So I mean... Does the modified categorical approach actually lead us to the categorical approach in this case? I think it does, Your Honor, because our position is that the aggravating factors are all strict liability and so they're all categorically overbroad. And the modified approach has like there are two requirements for it. The statute has to be divisible, meaning elements not means. But it also essentially has to matter, right? One of the divided offenses has to be a match for the generic federal offense, in this case a CIMT. So our view is that... I mean, I agree that as between the felony and the misdemeanor grade, they're divisible because there's an increased penalty for the felony grade and that means that the presence of an aggravating factor has to be proved beyond a reasonable doubt. But I think it ultimately doesn't matter because they're overbroad anyway. If we disagree with you, focus on crossing a state line, the second one. Is that... I mean, does that doom the government's case? I think it does, Your Honor. I mean, there's nothing... This court's cases in Monn and Nappic and Baptiste together established that for this kind of CIMT, not a theft offense or a fraud offense, the critical... The actus reus element has to involve actual injury to another person or a grave risk of actual injury. That's Baptiste and Nappic. Monn, on the other hand, held that Pennsylvania's reckless endangerment statute was not a CIMT because it only required conduct that may place a person in danger. So I mean, I think the least culpable conduct here of failing to stop and crossing a state line, I mean, that's even less of a potential risk than Monn. I think Monn kind of controls the outcome here. The government... If you fail to stop and cross a state line, from your point of view under Monn, you still win. That's correct, Your Honor. I see I have just a few moments left. I want to quickly talk about the mens rea element because that seems to be where the court's interest is. So the idea behind a CIMT is that you've done something reprehensible and you did that reprehensible thing knowingly or at least recklessly. And there's a disjuncture here between the sort of reprehensible act and the intent. Assuming you agree with me that the willfulness intent doesn't track on to, yeah. So I mean, the government's essentially conceded that failing and refusing to stop isn't a reprehensible act. That's kind of the upshot of this. You don't think it's depraved? What's that? You don't think it's depraved? I don't think it's inherently depraved, base, vile, reprehensible, immoral. It's quite a list. It is quite a list. But I think that does tell the court what kinds of crimes we're talking about here. So and the government's sort of attempt to shave down the list of conduct that qualifies under the felony provision tells you that they don't think that failing and refusing to stop is reprehensible. So if anything about the least culpable conduct is reprehensible, it's got to be crossing a state line. And because that part of the offense applies with strict liability, there's a disjuncture between the culpable intent and the reprehensible act. Thank you, counsel. Thank you. We'll hear from you on rebuttal. Now we'll hear from your advocate. Good morning, your honors. Good morning. May it please the court, I'm Rebecca Nahas for the United States Attorney General Merrick Garland. The court should affirm the agency's conclusion that this Pennsylvania felony fleeing or looting offense is categorically a crime involving moral turpitude.  Before you go there, how about the two convictions that was referred to in the decisions by the BIA and the IJ. Do you know anything about this? And do you take a position at this point on whether they matter? So your honor, I'm not independently aware of the status of those crimes. Petitioners counsel did mention that one of them was withdrawn and that there's only one final conviction. No, I think he said the appeal was withdrawn. Yeah, the appeal was withdrawn. So the conviction is final. If counsel can address on rebuttal, counsel, you can address on rebuttal because we're in your adversary's time. Not that I don't want to hear from you, but my understanding is what he said was the appeal was withdrawn. I didn't know because the direct question was what's the status of the appeal. Yeah, that's what I took from this as well. Well, listen, I don't want you to have to sit and speculate. Why don't we have both parties put in briefs not exceeding seven pages dealing with this issue of the two convictions and what happened with the appeals and would these convictions be a separate basis for concluding that Mr. Ovando was convicted of a CIMT? Alternatively, whether we should remand to let the BIA consider those convictions because they were named in the first notice of appeal, right? That's right. One of the remedies requested was to order the termination of the removal proceedings, which couldn't be done if one of the retail thefts was still extant. So we need to know about the facts and what their import is as to this particular individual. Absolutely. And the government is happy to supply that. Okay, great. And why don't we go with... I mean, you can do it. You can take two weeks, I think. That'd be fine. Okay? Okay. Thank you, Your Honor. All right. Thank you. You can proceed. Okay, so... I'll give you a little extra time because we... Okay, no problem. Okay. If you need it. So back to felony fleeing or looting. So it's undisputed that Petitioner was convicted of the felony version of this offense. And contrary to Petitioner's claim, the felony version of this offense does not extend to mere failures to stop or refusals to stop. And that's based on the express language of the statute. The statute says that a defendant who violates the misdemeanor version is classified as a While fleeing or looting, he, end quote, commits an aggravating factor. So the express language of the statute limits the felony version to fleeing or looting. It excludes mere failures to stop or refusals to stop. That's supported as well by the jury instructions, as well as common sense. Because the mere failure to stop or refusal to stop is a discreet action. It's not ongoing, like fleeing or looting. And so you can't commit that discreet act while also driving under the influence of alcohol, crossing state lines, or endangering the public by engaging. Which statute are you using? I'm sorry. It's 37. It's 75. 3733A2, right? Yes. A2. A.2. And so what is the import of the fact that it excludes mere failure to stop when it has as a precursor, while fleeing or attempting to elude one of the following is done? Sure. What is the import of that? So I wanted to clarify what the elements are that we're considering in this case. So we're considering, let's talk about the least culpable conduct, willfully fleeing from law enforcement, knowing that the police officer directed the individual to stop and refusing to do so, while also committing one of the three aggravating factors. And so we compare those elements to the definition of a crime involving moral turpitude, which requires a scienter and reprehensible conduct. And starting with the scienter, we believe that that element is satisfied because the statute requires a willful flight. And this is consistent regardless of the mens rea for the aggravating factors. To be transparent, the government has not found authority that the aggravating factors have separate mens reas, separate from the willful flight. But regardless of that- Do you concede then that there's strict liability, as your friend says? I would say that I haven't found any authority to support that there is a mens rea attached to those three aggravating factors. What about the canon your adversary referred to that basically says that the mens rea trickles through all of the elements unless special circumstances indicate. Should we not apply that canon? So my understanding, it's a case called Jean-Louis v. U.S. Attorney General. It's an immigration case, and they cite a stopgap provision under Pennsylvania law that says that that principle that the mens rea applies throughout doesn't apply to aggravating factors. But the aggravating factors, do you agree they're elements? Yes. They're elements for immigration purposes. I don't know if they're elements. And now I'm arguing against my case. But they are- Have you seen the Pennsylvania jury instructions or read Bowen? I'm sorry, Your Honor? Have you seen the Pennsylvania jury instructions or read Bowen v. Commonwealth? I'm not sure if it's the same Bowen that we've both read. Incidentally, what you're doing is candor, and we appreciate it. But I don't think that it matters. I don't think the court needs to really decide that, because we have the scienter that is attached to the reprehensible conduct of fleeing in a vehicle, knowing that a police officer directed you to stop. Actually, though, the Pennsylvania Superior Court has interpreted that language as not requiring, that the fleeing part of it does not require a pursuing police officer. That's Commonwealth v. Wise? Correct. I don't think that that applies here, because that was interpreting the misdemeanor version. So there were no aggravating factors. So perhaps a pursuit isn't needed when you're not also driving under the influence. Logically speaking, there's going to be a pursuing police officer. But I think that that is limited to the misdemeanor version, Your Honor. What if the police officer is on the other side, not pursuing, but sees the driver coming toward him? There's no pursuit, in other words. My reading of the felony version is that not necessarily a high-speed chase in every context, but in every violation, there is going to be a police officer present. It's not going to be a mere failure to stop, because one, it's contrary to the plain language of the statute, and also it doesn't logically flow that you can fail to stop, discreet act, and also commit these ongoing violations. In your view, do you need the high-speed chase? In every violation, no. To trigger the language you want and the way you focus on it? No, no, Your Honor. So it could be somebody, well, you need a motor vehicle of some sort. It could be a motorboat crossing the Delaware. No, I think it needs to be a vehicle, Your Honor. You don't think a motorboat's a vehicle? I don't. But, so I will go back to the hypothetical of the least culpable conduct, but I just wanted to wrap up my point about the scienter, is that there is no requirement that the aggravating factors themselves have amends REIA. That's consistent with the Seventh Circuit in me and Kanu. In both of those cases, the Seventh Circuit just said these vehicle flight statutes required knowing conduct, and that's enough. They didn't then go and consider whether the requirement that you speed also required amends REIA. Let's assume that's the case, or let's even assume there is a scienter requirement. How is crossing state lines, how is that reprehensible conduct? Sure, Your Honor. It doesn't seem terribly turpitude-ness, so. I love that word. Me too, me too. Well, I think we can't lose sight of the foundational conduct under this statute, that it requires an intentional flight from a police officer. And every violation, including the violation where someone is simply crossing state lines, there is going to be a car present, and the car can be used as a deadly weapon in certain circumstances. There is going to be a police officer present. This isn't a defendant just driving alone in an empty road. There's a police officer present in every violation. That defendant is defying- Is every violation then a felony? I'm sorry, Your Honor? Is then every violation going to be a felony? I mean, it seems like you're excluding all of the aggravators in Part B. I guess in addressing the court's concern that crossing state lines- Yes, you're right. I'd like to just draw the court's attention to the foundational element, and not look at the crossing state line in the vacuum. But you said, one of the things you said is that because a vehicle can be a dangerous weapon, that should be enough. But your adversary rightly pointed to Mahan that says the possibility is not sufficient. It has to be the actual endangerment as part of the elements that would be triggering. Well, we're close to the Ben Franklin Bridge. You cannot stop on the bridge. You must keep going and cross state lines. Well, there's an affirmative defense for that, Your Honor. In the statute, if you believe that it was unsafe for you to stop, you can present that affirmative defense. So we wouldn't have a conviction under those circumstances. But to answer Your Honor's question, I think we can't- There's a car present, and it could be used as a weapon. But there's also other- there's a police officer present. There's a defiance of a law enforcement officer's directive to stop, which is a threat to his authority and escalates the situation, even more so when the person is crossing state lines. But if that became the test, that defiance to police, showing a police authority is the test, then every alluding statute would be sufficient. Well, I think- To be turpitudinous, right? That would be against the community's sense of propriety. That we'd have to adopt that standard. That avoiding the willful showing of authority by ignoring that is too turpitudinous. And the case law doesn't seem to go that way, right? But Your Honor, I think under the circumstances where there's a car present and there's a police officer present and they're crossing state lines, I think that could signal to the police officer that the defendant has something more to hide or that he needs to escalate his- the police officer needs to escalate his response in order to apprehend the individual. And I also want to address, Mahan, I think in that case it was addressing reckless endangerment, which is a very different statute. That statute covers reckless conduct and that then creates- that may endanger another person. Reckless conduct is really broad, right? You need- first of all, reckless is a much lesser mens rea than knowing. So under the board's approach to CIMTs, we need worse conduct to make it a CIMT when the mens rea is lower. And moreover, the conduct is really broad. And so for it to be a crime involving moral turpitude, we need that elevated level of inherent risk. And I do think that this is consistent with the Fourth Circuit in Granados recently recognized that vehicle flight that is like our statute, intentional, or in that case, it was willful or wanton disregard of a signal to interfere. That was the least culpable conduct there, simply to interfere with law enforcement. And the Fourth Circuit found that was morally turpitudinous because of the inherent risk of danger to the police officer, the other drivers, pedestrians. And in that case, the petitioner argued, well, you know, this interference prong is really minimal. It's just like obstruction of justice, and obstruction of justice is not a CIMT. And the Fourth Circuit said, well, you're forgetting the critical distinction between vehicle flight and obstruction of justice. But I think the difference with that's the statute that issue in Granados was it had language that said something like, so as to interfere or endanger. So it has almost a different purposefulness incorporated within the statute. So I'm not sure that Granados is apt here because the statutes are written so differently. That is correct, Your Honor. But I do think that in terms of whether all the circuit courts have required actual endangerment explicit in the statute or something like speeding, that's not the case. Interference was enough for the Fourth Circuit. It was enough for the Seventh Circuit. In the Fifth Circuit, in an unpublished decision, the statute was simply intentional flight. There were no aggravating factors. The way this case is teed up is basically to get the court to accept the notion that crossing state lines inherently invites this hyperbolic confrontation with the police. And that's a tough thing to accept. Well, the Supreme Court talked about the inherent risk of simple vehicle flight in Sykes. And this court in Jones found the misdemeanor version of this offense to be a violent felony, albeit a now unconstitutionally vague provision. So is Jones still good law since it relies on Sykes, which has been overruled by the Supreme Court? I think that its discussion of the danger remains good law. I think that this statute is inherently dangerous, according to the Supreme Court and in this court. And that isn't undermined by virtue of the methodology being arbitrary. But one of the criticisms that Johnson had of Sykes is that it was too amorphous about whether or not danger was going to happen. I'm paraphrasing, but that's what my understanding was. And so I'm not sure that the language you'd like us to embrace from Jones is to survive Sykes. I just want to point to they use the word inherent. And I think that that means that it's not an express element, but that in every violation, there's this danger inherent. So I just mean this to say it's not, there is support for the vehicle flight plus the crossing straight line. You're on the way to saying your possibility. I think the court said inherently, they used inherently violent. And if I may, I know that I'm over, just address divisibility. If your honors disagree that this is a categorical match, and your honor is aware of Bowen, which says that aggravating factors are elements, and the government has provided authorities for why the aggravating factors themselves are elements, we would ask for remand for the agency to apply the modified categorical approach anew in light of PARETA, which is a Supreme Court decision that was recently issued, and it clarified that the Shepard documents don't apply in the immigration context, that the agency is not bound by Shepard. It says that it was a cancellation removal case, and they were saying we can look at the other types of documents listed in Title VIII to consider, to inform us, us being the BIA or whoever the decision maker is, about what the proper document is. Justice Gerrard, do you mind if I just inquire on this subject? By all means. So the Shepard document, the so-called Shepard document, the document you have asked us to consider for remand, is the affidavit a probable cause, correct? Yes, and one other. What is the other document? So the plea agreement also includes a factual basis, which says that the defendant in danger, I believe he uses the word in danger. Before you go too much further, you say that's the plea agreement? No, I'm sorry. It doesn't say in danger. It says the defendant drove away from police while minor children were in car, not in discernible seatbelts. And that's from the plea agreement, and yes, plea agreement. Are you sure that's the plea agreement and not the document that's prepared in anticipation of the entry of the plea? Yes, Your Honor, it's at AR 203 is where it starts. We've seen it, but what is that exactly? This document reads more a statement accompanying... I'm reading for the record, if it's all right. Statement accompanying defendant's request to enter a guilty plea. And this is what I understand this to be equivalent to what would be in the federal courts as a Rule 11 of the criminal rules form that precedes the entry of a plea, and that there is a separate plea agreement. This is almost a verification of the inquiry a district court judge in the federal system would engage in to determine all the Boykin rights and Rule 11 is complied with. So I don't understand this to be a plea agreement. And so... Well, then this... If it's not a plea agreement, how... This is a defendant's recitation. It's another factual matter that hasn't been adopted by a neutral decision maker, which all those documents in Title VIII, the one common theme is they all seem to reflect some neutral decision maker has determined a fact has occurred. And usually that neutral decision is a court. So, if this is a plea agreement, how can we rely on this? Well, we would kindly request that the court leave this to the agency to decide because the Supreme Court in Pareto said expressly that the Sixth Amendment concerns underlying Shepherd don't apply in the immigration context. Look at 8 U.S.C. 1229 AC3B. And they also said, they didn't stop there. They said, and we don't know if that's the entire universe of documents that the agency can consider. And this is really within the agency's purview to decide, sort of fashion its own procedural rules. But let's just go back to the affidavit of probable cause. We have a case called Evanson. And in that case, the panel ruled that if a complaint has been superseded by an information, the complaint is no longer an operative document for Shepherd purposes. So, we're bound by our own precedent, if I'm reading the case correctly, that the affidavit of probable cause is off limits. So, I don't know how we could remand something to have the BIA consider something that our court has already said is off limits. Well, the court was bound by Shepherd in Eason, I believe. They were applying Shepherd. We're in a new universe now. We believe that Pareto overruled the case law that limits the documents in immigration proceedings. Okay. And we do think that this statement... Has anybody applied to Pareto and said Pareto overrules? There is a board case asking for, I believe it was amicus or supplemental briefing on this issue. So, it is percolating up within the agency. I'm not aware of any decisions, Your Honor. And I apologize. May I ask you, of course, let me ask you, is there anything else that we need to know? Is there some sort of a transcript of the plea that maybe isn't part of the record yet? I mean, it's something that we should know. I suspect the answer is no, but are you aware of any other documents that might help us or the BIA for that matter? I'm unaware of that, Your Honor. Okay. Give us clarity, in other words. But, okay. Thank you. Could it be part of what you look at when you're looking at these retail theft status of that? Absolutely. If I find anything, I will include that in my supplemental brief. Okay. Unless Your Honors have any other questions. Thank you so much. Great. Thank you. Thank you. And we'll hear from your friend. Thank you, Your Honor. Just a couple of points on Roboto. First, Judge Schwartz, let me clarify what I meant. My understanding is that the charge was withdrawn, not the appeal. The criminal charge was withdrawn? Yes, Your Honor. Okay. Thank you. And you can verify that for us in our submission? Yes, Your Honor. Absolutely. Thank you. On the question of the inherent violence in fleeing or looting, the government's argument is predicated not just on overruled cases, but on a methodology that the Supreme Court specifically criticized for leading to unconstitutional vagueness. When the government says that, you know, failing to stop and crossing a state line invites violent confrontation, how does the government know that? Not from the statutory elements, which say nothing about violence. What the government's doing is imagining a sort of hypothetical, typical incident of vehicle flight. That's what led the residual clause to be held unconstitutionally vague in Johnson. So I do not think that the government can rely on that methodology here. I also want to emphasize that the implication of the government's argument is that the misdemeanor violation without any of the aggravating factors would also be a CIMT. Because the government says that a willful failure to stop with no aggravating factor is inherently violent. And that means in the government's, the consequence of the government's view is that the misdemeanor is a CIMT. And also, you know, it is a second degree misdemeanor which means that it's punishable by up to two years in prison. So it's not just a sort of hypothetical CIMT, it actually could be used to remove someone from the country. So the government mentioned the Seventh Circuit's decision in May as sort of not requiring the willfulness on the speeding 21 miles an hour or over. I don't think that's exactly right. So the aggravating statute that the court considered there was predicated on the unaggravated version, which required willfulness. And the Seventh Circuit looked to the pattern jury instructions for the aggravated offense. And that, and those instructions applied the willfulness element to the speeding. How do you distinguish Grenados, which your adversary raised? So, I mean, Grenados held that, not that the mens rea, not that a mens rea on one element was enough, but that as a matter of statutory interpretation of Virginia law, the higher mens rea applied to both elements. And so, you know, and in fact the government conceded there that a mens rea, a sufficiently culpable mens rea was required on every element of the offense. So they're kind of taking an opposite position from what they took in Grenados. Thank you. If there are no further questions. No, I don't. Thank you very much, Your Honor. Okay, thank you, counsel. We thank counsel for their excellent briefing and argument today in this very interesting case. We'd ask the parties to work with the clerk. We'd like to see a transcript of this argument and ask that the parties split the cost of the transcript. But again, we thank counsel for their excellent argument today. We were, it was very helpful and we wish everyone well and good health. And I'll ask the clerk to adjourn.